WO

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| John D. Kaufmann,<br><br>          Plaintiff,<br><br>v.<br><br>Pima County, a body politic; Clarence W. Dupnik, Pima County Sheriff; J.W. Knipp and Jane Doe Knipp, husband and wife; Lt. Navarro and Jane Doe Navarro, husband and wife; Sean Holguin and Jane Doe Holguin, husband and wife, India Davis and John Doe Davis, husband and wife; Warren Alter and Jane Doe Alter, husband and wife,<br><br>          Defendants. | CV 11-534 TUC DCB<br><br>**O R D E R** |

       The Court grants in part and denies in part the Defendant's Motion for Summary Judgment based on qualified immunity.

**1.  The Plaintiff's Allegations:**

       The Plaintiff, an attorney, alleges that on Friday, August 27, 2010, he attended a proceeding at the Arizona Superior Court for a client, Ms. Fisher, involving her ex-husband, Mr. Stephenson (Stephenson).  Plaintiff attended the hearing with his client's father, Mr. Dunlap (Dunlap), because his client chose to not appear.  At the courthouse, Dunlap and Stephenson, accidentally, encountered each other near the men's room prior to the hearing. Plaintiff was standing at the courtroom door, waiting for Dunlap, when he saw the two men, walking close to each other, round a corner at the end of the hallway as they walked from the bathrooms to the courtroom.  Plaintiff saw them exchange looks and words in the court house

hallway. Stephenson reported to courthouse security that Dunlap had assaulted (tripped) him. When Pima County Sheriff's officers questioned Dunlap, the Plaintiff volunteered[1] that he had been present and that he had not seen any contact between the two. (Plaintiff's Statement of Facts (P's SOF) (Doc. 48) at ¶¶ 24-29.)

When investigating officers reviewed court security tapes they did not see the Plaintiff in the hallway and concluded he was in the courtroom and, therefore, lying. Based on the court security video tapes, they arrested the Plaintiff by citation for giving false information in a criminal investigation and arrested Dunlap for assault. *Id.* ¶ 27. In fact, the Plaintiff was in the hallway area, standing in a recess just outside the door of the courtroom. *Id.* ¶ 28.

On Monday, August 31, the court video tapes were reviewed again, and this time Defendants saw that Plaintiff was standing in the hall recess to the courtroom door. *Id.* ¶ 40. The Defendants conducted an on-sight review of the hallway, and then changed the basis for probable cause to be that the Plaintiff could not see the altercation from the door recess. *Id.* 40-50, 53-60. Plaintiff alleges the Defendants drew this new conclusion based on positioning the Plaintiff in a location in the doorway, they knew was fictitious. *Id.* ¶ 60.

On September 7, 2010, a complaint alleging a misdemeanor crime for giving false information to law enforcement was filed against the Plaintiff. By September 29, 2010, Defendant Knipp admitted during an internal affairs investigation that the Plaintiff could see the two men as they rounded the far corner of the courtroom hallway. Nevertheless, the Defendants maintained the action against the Plaintiff until February 2011, when Defendants moved to dismiss it without prejudice. *Id.* ¶ 73. And, the internal affairs investigation concluded the arresting officer was not at fault. *Id.* ¶ 72.

---

[1]Defendants complain that Plaintiff "intervened" when officers attempted to question Dunlap, (Motion for Summary Judgment (MSJ) (Doc. 44) at 2; Supplemental MSJ (Doc. 59) at 3), but Plaintiff properly intervened both as Dunlap's attorney and as a witness.

The Plaintiff names as Defendants: the officers involved in the initial investigation and paper arrest of the Plaintiff;[2] the officers involved in the subsequent investigation into the matter, including internal affairs investigators, Sean Holquin, a Pima County attorney in the civil division, who represents Defendants in civil tort matters, Pima County, and Clarence Dupnik, the Pima County Sheriff.[3] He asserts a broad-based conspiracy to cover up arresting officers' mistake in determining there was probable cause for the arrest and his prosecution.

The Plaintiff requested the video recordings related to the offense be preserved, but Defendants allegedly allowed the recording of his interaction with the arresting officer to be taped over.[4] The Plaintiff charges Defendants with spoilation of evidence in Count VI of the Amended Complaint, but under Arizona law there is no such separate cause of action. *La Raia v. Superior Court*, 722 P.2d 286, 288-89 (Ariz. 1986).

Defendants submit copies of court security video recordings reflecting the alleged assault and Plaintiff's location in the courthouse hallway at that time, which both sides argue support their positions.

/////

---

[2]Plaintiff did not name arresting Officer Iago, who arrested him pursuant to a directive from Defendant Knipp.

[3]Plaintiff asserts factual allegations against the Pima County Attorneys office and its attorneys, (Amended Complaint (Doc. 55) at ¶¶ 4, 23, 24, 28, 36, 37, 38, 69), but does not name it nor any attorney other than Sean Holquin as a defendant in the case. Under *Monell v. Dept of Soc. Services*, 436 U.S. 658, 690-91 (1978), there is no liability under 42 U.S.C. § 1983 based on a theory of *respondeat superior*. As to the state law claims, Pima County is similarly not liable for actions taken by the sheriff or his deputies. *Fridena v. Maricopa County*, 504 P.2d 58, 62 (Ariz. App. 1972).

[4]The recording was only video, which would not reflect what the Plaintiff actually said to the arresting officer, but according to the Plaintiff it would have reflected where he showed her he was standing. The existing videos provide this information and it is now undisputed that the Plaintiff was present in the courthouse hallway and standing in the recess in front of the courtroom door.

1. **Standard of Review for Summary Judgment**:

On summary judgment, the moving party is entitled to judgment as a matter of law if the Court determines that in the record before it there exists no genuine issue as to any material fact. Fed.R.Civ.P. 56(c).

A material fact is any factual dispute that might effect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*  In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but then the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(e)). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.  "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

In 1986, the Supreme Court issued this trilogy of cases and ushered in a "new era" of summary judgment motions for the federal courts. *See Rand v. Rowland*, 154 F.3d 952, 956 -957 (9th Cir. 1998). As explained in *Celotex*: "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

1    Accordingly, motions for summary judgment are not disfavored, but are instead an
2    integral part of the Federal Rules designed to secure just, speedy and inexpensive
3    determination of every action. *Celotex*, 477 U.S. at 327 (citations omitted). The Court must
4    enforce summary judgment not just in regard for the rights of the nonmovant, but also for the
5    rights of the party contending that there exists no genuine issue of material fact. *Id.*

6    The Judge's role on a motion for summary judgment is not to determine the truth of
7    the matter or to weigh the evidence, or determine credibility, but to determine whether there
8    is a genuine issue for trial. *Anderson*, 477 U.S. at 252.  The inquiry mirrors the standard for
9    a directed verdict: whether the evidence presented reveals a factual disagreement requiring
10   submission to a jury or whether evidence is so one sided that one party must prevail as a
11   matter of law.

12   **2.  Qualified Immunity:**

13   Additionally, the doctrine of qualified immunity protects government officials from
14   liability "for civil damages insofar as their conduct does not violate clearly established
15   statutory or constitutional rights of which a reasonable person would have known." *Harlow*
16   *v. Fitzgerald*, 457 U.S. 800, 818 (1982).

17   "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of
18   litigation'" *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (quoting
19   *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).[5]  Therefore, the court considers the question at
20   the first opportunity, so as to relieve the defendants of the burdens of litigation if they are
21   entitled to the defense of qualified immunity.  *Harlow*, 457 U.S. at 818.  Defendants will be
22   entitled to relief only if the facts and evidence submitted, resolved in Plaintiff's favor and
23   taken in the light most favorable to him, show that the Defendants' conduct did not violate
24   a clearly established federal right; or, if it did, the scope of that right was not clearly

25

26   [5] *Pearson v. Callahan,* 555 U.S. 223 (2009) (overruling *Saucier* as to mandatory
27   two-step sequential application of the two-prong test).

28                                          5

established at the time of the arrest. *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) (citing *Saucier*, 533 U.S. at 201). The first is a question of fact, the second is a question of law.

The Court has discretion to decide which of the two prongs to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009). One prong asks the question: do the alleged facts, taken in a light most favorable to the plaintiff, show a constitutional violation? The other prong asks: whether the allegedly violated constitutional right was clearly established in the context of the specific facts in the case? *Saucier,* 533 U.S. at 201. The dispositive inquiry for the second prong is whether it would be clear to a reasonable official that his conduct was unlawful under the specific circumstances allegedly encountered by the officer. *Id.* at 202 (citations omitted). Qualified immunity protects government officials "for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

Described another way, "the linchpin of qualified immunity is the reasonableness of the officer's conduct in the particular case at hand." *Rosembaum v. Washoe County*, 663 F.3d 1071, 1075, 1078 (9th Cir. August 22, 2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). The question "'turns on the *objective legal reasonableness* of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (quoting *Anderson*, 483 U.S. at 638-39) (*emphasis in original*). In *Anderson v. Creighton*, the Supreme Court explained:

> The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. *This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful*, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

483 U.S. at 640 (emphasis added) (internal citations omitted).

"Framing the reasonableness question somewhat differently," the question is whether all reasonable officers would agree that there was no probable cause in this instance,

1   *Rosembaum*, 663 F.3d at 1078; "an official is not entitled to qualified immunity where 'every

2   reasonable official' would have understood that he was violating a clearly established right,"

3   *id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).  On the flip side, a competent

4   officer will sometimes make an unreasonable decision or make an unreasonable mistake as

5   to law or fact, and he will not be protected by qualified immunity.  *Id.* at 1078.

6   **4.    Probable Cause**

7              "It is well established that "an arrest without probable cause violates the Fourth

8   Amendment and gives rise to a claim for damages under § 1983."  *Rosembaum*, 663 F.3d at

9   1076 (citing *Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir.1988)). "An officer who

10  makes an arrest without probable cause, however, may still be entitled to qualified immunity

11  if he reasonably *believed* there to have been probable cause."  *Id.* (citing *Ramirez v. City of*

12  *Buena Park*, 560 F.3d 1012, 1024 (9th Cir.2009)).  Qualified immunity in the context of an

13  unlawful arrest, accordingly, asks: 1) whether there was probable cause for the arrest, and

14  2) whether it is reasonably arguable that there was probable cause for the arrest, i.e, could

15  reasonable officers disagree as to the legality of the arrest.  *Id.*  (citing *Jenkins v. City of New*

16  *York*, 478 F.3d 76, 87 (2nd Cir. 2007)).

17             Probable cause is a "practical, nontechnical conception" afforded as a compromise

18  between the interest of law enforcement officers who often must make split-second decisions

19  about whether to arrest a potential offender, and citizens who have a vested interest in

20  protecting their Fourth Amendment rights.  *Brinegar v. United States*, 338 U.S. 160, 176

21  (1949).   "Conclusive evidence of guilt is not necessary to establish probable cause."

22  *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).  All that is required is a fair

23  probability that a suspect has committed a crime.  *United States v. Lopez*, 482 F.3d 1067,

24  1072 (9th Cir. 2007).  However, "[t]here must be some objective evidence which would allow

25  a reasonable officer to deduce that a particular individual has committed . . . a criminal

26  offense."  *Id.* (citations omitted).

27

28                                                    7

An officer does not need to have probable cause for every single element of the offense. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (citing *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983)). However, when intent is a required element of the offense, "the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." *Gasho*, 39 F.3d at 1428; *see also Lopez*, 482 F.3d at 1072; *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 953 (9th Cir. 2010).

"An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosembaum*, 663 F.3d at 1076 (citing *Crowe v. County of San Diego,* 608 F.3d 406, 432 (9th Cir.2010), *cert. denied,* 131 S.Ct. 905, 907 (2011)). "The analysis involves both facts and law. The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply." *Rosembaum*, 663 F.3d at 1076.

**5. Defendants' Motion for Summary Judgment.**

In this case, the issue is whether Defendants had probable cause to arrest and prosecute the Plaintiff for false reporting to law enforcement officers, a misdemeanor violation of A.R.S. § 13-2907.01. "It is unlawful for a person to knowingly make to a law enforcement agency . . . a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer." *Id.*

It is undisputed that at the time of the arrest,[6] the Defendants mistakenly believed the Plaintiff was inside the courtroom, and therefore concluded he was lying about being present in the hallway and seeing what transpired between the two men there. In the video recording

---

[6]For purposes of this motion, the Court assumes an arrest occurred at the time the paper citation was issued.

of the hallway, the Plaintiff appears to enter the courtroom, but on closer examination a white folder, which was held by the Plaintiff, can be seen in the hallway video. (P's SOF (Doc. 48) ¶ 12.)  In spite of Plaintiff's repeated assertions to Defendants at the time of arrest that he was not in the courtroom, the video appeared to be evidence to the contrary. The Court finds that based on the video recording, the mistake in fact, i.e., Plaintiff was in the courtroom, was reasonable.  Likewise, the mistake in law, i.e., that there was probable cause to believe the Plaintiff was lying about being present in the hallway, was a reasonable conclusion.  This is the type of mistake that qualified immunity addresses, and Defendants are protected by qualified immunity from liability for Plaintiff's alleged false arrest.

Additionally, the Court must consider whether it was reasonable to prosecute the Plaintiff for false reporting once the Defendants realized the arrest was based on a mistake in fact. Subsequent to discovering the Plaintiff was not in the courtroom and was in fact in the courthouse hallway, the Defendants met at the courthouse to recreate the offense. *Id.* ¶ 56. Defendants reviewed two videos: one facing one way down the hallway and the other facing the other way. (Defendants' Statement of Facts (Ds' SOF) (Doc. 45), Ex. 14: Holquin Depo. at 18 lns 24-25; *see also* DVD video at Doc. 42).

The Plaintiff alleges that Defendants conspired to change the probable cause determination, (P's SOF (Doc. 48) ¶ 53), by repositioning themselves in a manner they knew to be wrong by standing in the recess closer in towards the door, *id.* ¶ 60. Plaintiff challenges Defendant Sean Holguin's conclusion that the Plaintiff would have to have been positioned near the colored tile outside the recessed area before he could have seen the two men as they rounded the corner of the hallway.  *Id.* ¶ 60.

Plaintiff asserts this later conspired basis for probable cause conflicts with Defendant Knipp's admission during the internal investigation on September 29, 2010, that Kaufmann was in a position in the recess of the door to see the altercation after the two men rounded the corner. *Id.* ¶ 62. Defendant Knipp's actual deposition testimony on September 29, 2010,

1     was that from the door recess the Plaintiff would be able to see "only after they got into the,

2     the hallway near the elevators, when they're about halfway between the two elevators." (P's

3     SOF (Doc. 48), Ex. 17: Knipp 9/29/10 Deposition at 3 lns 21-22.)

4        To be clear,[7] the video does not reflect and it is not alleged that the assault involved

5     a trip or fall nor any other actual physical contact between the two men, but reflects the two

6     walking in very close proximity to each other as if Dunlap was walking on the heals of

7     Stephenson as they rounded the corner. The Defendants concluded based on their review of

8     the videos and their on-sight recreation of the alleged assault that the Plaintiff could not have

9     seen the two men until they neared the center of the elevators, which according to the video

10    took the two men approximately seven steps to reach after they rounded the corner.

11    Defendants assert the altercation occurred as they rounded the corner.

12        The Court has reviewed the record and construes it in favor of the Plaintiff, and finds

13    it supports his assertion that the Defendants changed the probable cause determination for

14    Plaintiff's prosecution. The Plaintiff submits he told the investigating officer that he was

15    in the hallway, showed her where he was standing in the recess of the courtroom doorway,

16    explained he was waiting for his client, Dunlap, and looking down the hallway towards the

17    elevators. He said he saw the two men walking in close proximity to each other, with

18    Stephenson walking in front of Dunlap, and when Dunlap passed Stephenson, Stephenson

19    turned and looked at Dunlap and said something, which the Plaintiff could not hear. (P's

20    SOF (Doc. 48), Ex. 8: Kaufman Depo. at 34-37.) The Plaintiff told the officer, he did not see

21    any kicking, tripping, or stumbling and that he saw nothing happen except for the exchange

22    of words between the two men. *Id.*

23        Given the Plaintiff precisely described what is reflected in the video recordings, the

24    Court finds that after the Defendants discovered the Plaintiff was telling the truth about being

---

26        [7]There was some confusion regarding the location of the altercation between
Stephenson and Dunlap, with arresting officer Iago believing it to have occurred around

27 the corner in an adjacent hallway near the water fountain.

1    in the courthouse hallway, every reasonable officer would have understood they were

2    violating his clearly established right by prosecuting him without probable cause for false

3    reporting.   Therefore, if the jury believes the facts as asserted by the Plaintiff, liability will

4    exist under 42 U.S.C. § 1983.

5    **6.    Intentional and Negligent Infliction of Emotional Distress**

6           The Defendants move for summary judgment on these state law claims.  Plaintiff does

7    not object to dismissal of the claim for negligent infliction of emotional distress, which is a

8    cause of action for a person who witnesses an injury to a closely related person or fears for

9    his own safety because of the negligent conduct of another person.  (Motion for Summary

10   Judgment (MSJ) (Doc. 44) at 12) (citing *Pierce v. Casas Adobes Baptist Church,* 782 P.2d

11   1162, 1165 (1989); *Keck v. Jackson*, 593 P.2d 668, 669–70 (1979); *Villarel v. State Dept. of*

12   *Transp.,* 774 P.2d 213, 220 (Ariz. 1989)).  Intentional infliction of emotional distress requires

13   conduct by defendant which is extreme and outrageous, intentional or done with reckless

14   disregard, and the conduct must cause severe emotional distress.  *Id.* at 9 (citing *Spratt v.*

15   *Northern Automotive Corp.* 958 F.Supp. 456, 461 (D.Ariz. 1996); *Lucchesi v. Frederic N.*

16   *Stinmel, M.D.,* 716 P.2d 1013, 1015 (Ariz. 1986); *Mintz v. Bell Atlantic Systems Leasing*, 905

17   P. 2d 559, 562-63 (Ariz. App. 1995); Restatement (Second) of Torts §46). The Court makes

18   an initial determination of the sufficiency of the Plaintiff's case.  *Id.* (citing *Davis v. First*

19   *National Bank of Arizona,* 605 P.2d 37, (Ariz. App. 1979) disagreed with on other grounds

20   *Godbehere v. Phoenix Newspapres, Inc.*, 783 P.2d 781, 786-87 (Ariz. 1989)).

21          Plaintiff asserts the following outrageous misconduct: "First, the government either

22   lied, misrepresented or was grossly (recklessly) negligent in charging Kaufmann with an

23   offense. That conduct could have been cured by a phone call to Kaufmann after his arrest,

24   indicating that a review of the video would result in the dismissal of charges. If the

25   government had acted in that manner, there would be no gross, outrageous or intentional

26   misconduct or conduct with reckless disregard of its consequences. Instead, the government

27

28                                                    11

decided to proceed in a different manner. Wagons were circled. Facts were altered. Several individuals high up in the Sheriff's Department command chain and a Deputy County Attorney elected to pursue the prosecution by any means necessary. They gathered for a special conference. As a result of the conference, Sergeant Knipp changed his story. Immediately thereafter, an attorney, Knipp and his immediate supervisor, Navarro returned to the Courthouse in order to falsely document the government's new theory. The government continued the prosecution for six months. The government altered and changed the testimony of Sheriff personnel participants." (Plaintiff's Opposition (P's Opposition) (Doc. 47) at 17.)

Even if this alleged misconduct rose to a level of outrageousness to support a claim for intentional infliction of emotional distress, Plaintiff fails to allege any facts to support his assertion that he has suffered severe emotional injury. Emotional distress alone is not enough. *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. App. 1982). Additionally, Plaintiff's claim for intentional infliction of emotional distress is a state law claim asserted against Defendants Pima County, Pima County Sheriff Clarence Dupnik, Holquin, Davis, Alter, Navarro, and Knipp. Plaintiff admits noncompliance with Arizona law, A.R.S. § 12-821.01, notice requirement as to Defendants Navarro, Davis, Holquin and Alter.

**Accordingly,**

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 44) is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that Count I, 42 U.S.C. § 1983, for violating Plaintiff's right to be free from arrest without probable cause is DISMISSED based on the doctrine of qualified immunity.

**IT IS FURTHER ORDERED** that Count I, 42 U.S.C. § 1983, for violating Plaintiff's right to be free from prosecution without probable cause is NOT DISMISSED, EXCEPT COUNT I IS DISMISSED as to Defendants Pima County and Clarence Dupnik, Pima County Sheriff, under *Monell v. Dept of Soc. Services*, 436 U.S. 658, 690-91 (1978).

**IT IS FURTHER ORDERED** that Count II, Conspiracy to violate 42 U.S. C. § 1983, for arresting the Plaintiff without probable cause is DISMISSED under the doctrine of qualified immunity.

**IT IS FURTHER ORDERED** that Count II, Conspiracy 42 U.S.C. § 1983 for violating Plaintiff's right to be free from prosecution without probable cause is NOT DISMISSED, EXCEPT COUNT II IS DISMISSED as to Defendants Pima County and Clarence Dupnik, Pima County Sheriff, under *Monell v. Dept of Soc. Services*, 436 U.S. 658, 690-91 (1978).

**IT IS FURTHER ORDERED** that Count III, False Imprisonment, IS DISMISSED.

**IT IS FURTHER ORDERED** that Count IV, Intentional Infliction of Emotional Distress, IS DISMISSED.

**IT IS FURTHER ORDERED** that Count V, Negligent Infliction of Emotional Distress, IS DISMISSED.

**IT IS FURTHER ORDERED** that Count VI, Spoilation, IS DISMISSED.

**IT IS FURTHER ORDERED** that Count VII, Malicious Prosecution, remains as alleged against Defendants Knipp and the Pima County Sheriff Clarence Dupnik.

**IT IS FURTHER ORDERED** that the parties shall file the Joint Pretrial Order with the Court within 30 days of the filing date of this Order.

DATED this 22nd day of July, 2013.

David C. Bury
United States District Judge